IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

        Plaintiff,

v.

APPROXIMATELY 1,049.998259624872677 ETHER;

        Defendant.

_____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***
_____

        The United States of America, by and through Acting United States Attorney Matthew T. Kirsch and Assistant United States Attorney Tonya S. Andrews, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), states:

<u>JURISDICTION AND VENUE</u>

        1.    The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(C), seeking forfeiture of defendant asset based upon violations of 18 U.S.C. § 1030 and 18 U.S.C. § 1343, as well as the provisions of 18 U.S.C. § 981(a)(1)(C), seeking forfeiture of defendant asset based upon violations of 18 U.S.C. §§ 1956 and 1957. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

        2.    Venue is proper under 28 U.S.C. § 1395(c), as some of the acts described herein occurred in the District of Colorado.

## DEFENDANT PROPERTY

3. Approximately 1,049.998259624872677 Ethereum seized on June 10, 2021, from Swaplab, currently in the custody of a Federal Bureau of Investigation controlled wallet in Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

## CRYPTOCURRENCY TERMS

4. Cryptocurrency is generally defined as an electronically sourced unit of value that can be purchased with, sold for, or used as a substitute for fiat currency (*i.e.*, currency created and regulated by a government).  Cryptocurrency is not issued by any government, bank, or company; it is, instead, generated and controlled through computer software operating on a decentralized peer-to-peer network.  Cryptocurrency is not illegal in the United States.

5. Bitcoin ("BTC"), Ethereum ("ETH" or "ether"), and Monero ("XMR") are types of cryptocurrencies.  Payments made with these cryptocurrencies are typically recorded in a public ledger that is maintained by peer-to-peer verification (i.e., a "blockchain") and is, thus, not maintained by a single administrator or entity.  Monero is the exception to this; the transaction record is not publicly available.

6. Individuals can send and receive cryptocurrencies through peer-to-peer digital transactions or by using a third-party broker.  Such transactions can be done on many types of computers, including laptop computers and smart phones.

7. Most cryptocurrencies have a "blockchain," which is a record or distributed public ledger of every transaction ever conducted that is distributed throughout the decentralized network. The blockchain makes it highly difficult for someone to retroactively alter the record for their benefit, such as claiming they still possess currency they have already spent.

8. Even though the public addresses of those engaging in cryptocurrency transactions are recorded on a public ledger, the true identities of the individuals or entities behind the public addresses are not recorded on the public ledger. If, however, an individual or entity is linked to a public address, it may be possible to determine what transactions were conducted by that individual or entity.

9. Cryptocurrency can be stored in digital "wallets." A wallet essentially stores the access code that allows an individual to conduct cryptocurrency transactions on the public ledger. To conduct transactions on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address can be analogized to a traditional bank account number, while the private key is like the password or PIN used to access that bank account.

10. Exchanges are companies that interchange cryptocurrencies for users, such as exchanging Bitcoin for the equivalently valued amount of Ethereum.

11. Non-custodial exchanges, such as HPV Limited, also known as Swaplab, do not hold the user's currency. In order to exchange currency, users send their currency to a unique address controlled by the exchange and then receive the equivalent funds in the new currency in the designated wallet.

## SWAPLAB

12. HVP Limited, doing business as Swaplab.CC ("Swaplab"), is a non-custodial cryptocurrency exchange service that allows users to convert between cryptocurrencies, such as exchanging Ethereum ("ETH") to Monero ("XMR"). Swaplab is headquartered in Providence, Mahe, Seychelles.

13. Swaplab does not collect user data or require accounts. Users may transfer funds by entering the desired amount and type of origin funds, desired new cryptocurrency, and a destination wallet address. Swaplab then provides the user with a wallet address to send the cryptocurrency. Once Swaplab receives the funds, they send the equivalent value of the new cryptocurrency to the destination wallet address.

## INVESTIGATION

14. SALT is a Denver, Colorado, based company offering personal and business loans. SALT accepts cryptocurrency from its users as collateral and, therefore, holds significant amounts of cryptocurrencies.

15. On February 27, 2018, the Denver Field Division of the Federal Bureau of Investigation (FBI) met with SALT personnel and attorneys representing SALT, regarding an intrusion into their systems.

16. SALT told the FBI that an intrusion occurred on their Slack communication platform. Slack is an internet-based communication platform targeted towards professional organizations. Slack has features that allow for company-wide and specific chatrooms, as well as direct messaging between users.

17. Between on or about February 8, 2018, and February 9, 2018, an unauthorized actor intercepted and edited Slack communications to redirect a transfer

of 5229.453625819000000911 ETH, which was valued at approximately $4.5 million USD on February 27, 2018, to the unauthorized actor's Ethereum wallet.

Salt Lending Infiltration

18.     Prior to the unauthorized ETH transfer, beginning on or about October 2017, the SALT Chief Executive Officer's (CEO) personal email account was compromised by an unknown attacker.  The CEO's personal email address was the recovery address used for the SALT CEO's G-Suite account.

19.     G-Suite, also known as Google Workspace, is a collection of workspace products by Google.  G-Suite consists of tools like Gmail, Contacts, Calendar, Drive, and Google Docs.  Drive is a file hosting and sharing service, Google Docs is an online collaborative environment where multiple users can access and edit documents and spreadsheets.

20.     The attacker used the compromised email accounts to gain access to the CEO's SALT G-Suite account, as well as the accounts of six other SALT employees, one of which belonged to the Chief Operations Officer (COO). SALT employees typically accessed their G-Suite accounts from the office located in Denver, Colorado.

21.     Analysis of the G-Suite IP address logins confirmed logins across multiple accounts, including the COO's account, from the same IP address within ten minutes, indicating one individual accessed multiple accounts.

22.     In February 2018, a borrower repaid a loan serviced by SALT and requested the return of the Ethereum cryptocurrency that had been deposited as collateral.  During this time, the SALT CEO was attending a conference in Cancun, Mexico, and did not have access to his personal computer.

23. On February 8, 2018, the SALT COO sent a message to the CEO over the Slack messaging application requesting the transfer of the 5229.453625819 ETH to a SALT account at the Ethereum wallet address 0x14EB16Cd896EaFbea0F205c01055F9d5A5a35174 (Salt destination wallet).  The COO logged in to Slack and wrote the communication while in Colorado. After the COO sent the message, an attacker edited the original Slack message and changed the Ethereum wallet to 0xC919423D178aAfB71dC06Fe5a325c7374e140b61, (attacker's wallet).  The Ethereum originated from the SALT wallet 0x6f8065A1982f3De6E24De4C0d55A2269Eec7F9e5 (SALT origin wallet).

24. On February 9, 2018, the SALT CEO used a computer in a hotel business center to authorize the transfer of the requested Ethereum from the SALT origin wallet to the attacker's wallet.  As a result, the 5229.453625819 ETH was transferred from the SALT origin wallet to the attacker's wallet.  Approximately three hours after the transfer, the attacker edited the subject message sent by the COO a second time to change the wallet address back to the SALT destination wallet.

25. Analysis of Slack access logs shows the attacker logged into the COO's Slack account from a United Kingdom-based IP address using a device associated with the Microsoft Windows operating system during the time the COO's Slack message edits were made.

26. The attacker's wallet was empty before the unauthorized transfer on February 9, 2018, and had no previous transaction history.

<u>Defendant Approximately 1,049.998259624872677 Ethereum</u>

27. After the unauthorized transfer, the attacker's account was inactive, neither receiving nor withdrawing any Ethereum until May 21, 2021.

28. From May 21, 2021, to May 24, 2021, the attacker moved the Ethereum out of the attacker's wallet over 24 transactions. Blockchain analysis showed that the destination wallet addresses belonged to Swaplab.

29. SALT requested Swaplab to freeze the incoming transfers from the attacker's wallet. At the time of this request, Swaplab had already processed the first 19 transactions and was only able to freeze the last 5 transactions, totaling defendant approximately 1,049.998259624872677 Ethereum, valued at approximately $2.8 million as of June 2, 2021.

30. Based on the facts and circumstances above, there is reasonable cause to believe that the defendant asset is proceeds of 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1030(a)(2), in violation of 18 U.S.C. § 981(a)(1)(C), and are therefore forfeitable to the Unties States.

*[Remainder of page intentionally left blank]*

VERIFICATION OF CARL BERINGER
SPECIAL AGENT, FEDERAL BUREAU OF INVESTIGATION

I, Special Agent, Carl Beringer, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

                                            s/Carl Beringer
                                            Carl Beringer
                                            Special Agent – FBI

FIRST CLAIM FOR RELIEF

31.    The Plaintiff repeats and incorporates by reference the paragraphs above.

32.    By the foregoing and other acts, defendant Approximately 1,049.998259624872677 Ethereum, constitutes proceeds traceable to violations of 18 U.S.C. § 1343, wire fraud.  Therefore, defendant approximately 1,049.998259624872677 Ethereum is forfeitable to the United States pursuant to 18 U.S.C.§ 981(a)(1)(C).

SECOND CLAIM OF RELIEF

33.    The Plaintiff repeats and incorporates by reference the paragraphs above.

34.    By the foregoing and other acts, defendant approximately 1,049.998259624872677 Ethereum, constitutes proceeds traceable to violations of 18 U.S.C. § 1030(a)(2).  Therefore, defendant approximately 1,049.998259624872677 Ethereum is forfeitable to the United States pursuant to 18 U.S.C.§ 981(a)(1)(C).

WHEREFORE, the United States prays for an entry of final order of forfeiture for the defendant property in favor if the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a

finding of probably cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 20th day of August 2021.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By: s/*Tonya S. Andrews*
Tonya S. Andrews
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0402
E-mail: tonya.andrews@usdoj.gov
*Attorney for Plaintiff*